ROGERS, J. (concurring in part and dissenting in part).

I concur in the answer of the majority of the court to the first question and dissent from their answer to the second question. In my opinion Act No. 187 of 1918, which is the latest expression of the legislative will on the subject, vests the authority in the chief of police of the city of Shreveport to appoint the members of the police force subject to the rules and regulations of the board of civil service commissioners, leaving, however, the

general supervision and control of the affairs of the police department of the municipality in the hands of the superintendent of the department of public safety.

(134 So. 243)

**STATE v. WEST.**

No. 31094.

March 30, 1931.

Rehearing Denied April 27, 1931.

A. A. Le Rosen, of Shreveport, for appellant.

Percy Saint, Atty. Gen., James U. Galloway, Dist. Atty., and Nash Johnson, Asst. Dist. Atty., both of Shreveport, and E. R. Schowalter, Asst. Atty. Gen., for the State.

ODOM, J.

The defendant was convicted of the crime of breaking and entering a warehouse in the daytime, and was sentenced to serve eighteen months at hard labor in the state penitentiary. He appealed from the conviction and sentence.

The only error complained of is the ruling of the court in refusing to grant a new trial.

The record discloses that on January 12, 1931, the district attorney filed a bill of information against the defendant, charging that he did in the daytime on November 27, 1930, break and enter a warehouse, the property of the Caddo Warehouse Company. On January 13, the day following, the accused was brought into court for the purpose of arraignment, and, being without counsel, the court appointed an attorney at law to represent him. He was then arraigned, pleaded not guilty, and his case set for trial for Friday, January 16. On the day of trial the accused appeared in open court accompanied by counsel, whom he had employed subsequently to his arraignment, and announced that he was ready for trial.

After trial and conviction his counsel filed a motion for a new trial, in which he set up that the rights of the accused had been prejudiced, and that injustice had been done him for the reason that counsel had not been given opportunity to make a proper defense. His motion for a new trial recites:

"That two informations were filed against him herein as shown by the attached copies hereto and made part hereof; that the first of said informations was nol prossed and the second filed on January 12, 1931, that defendant was arraigned on January 13, and the case set for trial on the 16th giving defendant only two clear days to prepare for defense; that at the time of his arraignment, he did not have counsel; that he employed counsel on January 14 and handed counsel the copy of the first information which had been served on him, the second having been served late on January 15, 1931; that said counsel did not learn of the second information till the trial had begun and most of the witnesses had been examined—except that his said counsel was entirely surprised when he read the information presented during the trial showing that burglary in the day time instead of night time was charged, which took him by surprise and which he did not at

first understand as he had left the copy he had at his office."

The motion was refused and a bill reserved, the bill of exceptions setting out substantially those facts recited in the motion for a new trial.

In his per curiam the trial judge said:

"No delay was requested by defendant's counsel, but on the contrary announced ready for trial. Two state witnesses positively identified defendant as the negro caught in the warehouse by them."

■ The record shows that the bill of information on which accused was tried was served on the day before the trial. Under section 992 of the Revised Statutes a person who is indicted for a capital crime or one punishable with imprisonment at hard labor for seven years or more shall have a copy of the indictment and a list of the jurors delivered to him at least two entire days before the trial, and a denial of this right is reversible error. State v. Culberson, 143 La. 565, 78 So. 941.

■■ But the accused may waive the right to have such service made upon him, and, where he goes to trial without objection, it is too late after verdict to object for the first time that such service was not made. A failure to object before trial is considered a waiver of the right. State v. Kane, 36 La. Ann. 153; State v. Mason, 38 La. Ann. 476; State v. Beeder, 44 La. Ann. 1007, 11 So. 816; State v. Murray, 47 La. Ann. 911, 17 So. 424; State v. Petit, 119 La. 1013, 44 So. 848.

Defendant, although served with a copy of the indictment only one day previous to the day of the trial, went to trial without objection and urged the objection only on motion for new trial. The objection came too late.

"Every motion for a new trial must specify the grounds upon which relief is sought, must be tried contradictorily with the district attorney, and the proof must correspond with the allegations of the motion.

"The motion for a new trial is based upon the supposition that injustice has been done the accused, and, unless such is shown to have been the case, the application shall be denied, no matter upon what allegations grounded." Articles 507 and 508 of the Code of Criminal Procedure.

The ground for the relief sought in this case is that counsel for defendant did not know until the trial was in progress that the accused was being prosecuted under an information charging that the crime was committed in the daytime instead of at night, as charged in the original bill. It is not contended that the accused is entitled to a new trial as a matter of legal right, because as a matter of fact a copy of the bill of information was served on him previous to the day of trial and he went to trial without urging the objection that it was not served two entire days before. But counsel in brief filed says "that the trial judge erred in not granting a new trial because the error complained of 'probably' resulted in this case in a miscarriage of justice," and he cites paragraph 5, art. 509, of the Code of Criminal Procedure, which provides that a new trial ought to be granted "whenever, though as a matter of legal right the accused may not be entitled to a new trial, yet the judge is of the opinion that the ends of justice would be served by the granting of a new trial."

■■ A motion for a new trial is addressed to the trial judge and the granting or refusal of the application is left largely to his discretion, and, unless it appears that the accused has in some way been prejudiced by his ruling, the verdict will not be set aside, even if the discretion has been extended to its full limit.

In the case of State v. Hawthorn, 134 La. 979, 64 So. 873, 876, the court said:

"Motions for continuance, delay, and for a new trial are addressed to the sound discretion of the trial judge, who is presumed to be acquainted with all the facts and circumstances of the case.

"The exercise of such discretion will not be interfered with by the appellate court except in clear cases of abuse."

To the same effect, see State v. Brannon, 133 La. 1027, 63 So. 507; State v. Michel, 111 La. 437, 35 So. 629.

The trial judge was of the opinion that no prejudice or injustice had been done this accused. He says in his per curiam that two witnesses identified him as the man caught in the building. Evidently the jurors and the trial judge thought he was guilty of the charge. If he was guilty, no injustice was done by convicting him.

Counsel says that the error of which he complains "probably" resulted in a miscarriage of justice, but he does not say that injustice was in fact done, nor does he point out any reasons from which we may assume that the rights of the accused were prejudiced. He does not say that defendant was not in fact guilty, or that, if granted a new trial, other witnesses could be produced whose testimony would tend to show his innocence. Counsel did not contend before the trial court, nor does he contend here, that, due to the misapprehension under which he was laboring, he failed to produce witnesses whose testimony would have been material to the defense. In fact he does not say what special defense would have been urged or would be urged if a new trial were granted. In the absence of any showing before the trial court that the rights of the accused had been jeopardized, and that

the alleged injustice could be rectified at another trial, the court was warranted in its refusal to set aside the verdict. It is not sufficient to allege merely that injustice was "probably" done.

The motion for a new trial being based upon the supposition that injustice has been done the accused, it was incumbent upon him to make some showing that such was the case. In the language of the Code, "unless such is shown to have been the case, the application shall be denied, no matter upon what allegations grounded." The trial judge was not of the opinion that the ends of justice would be served by the granting of a new trial, and there is nothing to show that he abused his discretion in refusing it.

The verdict and judgment are therefore affirmed.

O'NIELL, C. J., dissents.